UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL SAMSON GUZMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>R. VALDEZ, M. JIMENEZ, V. CUEVAS, and SCOTT FRAUENHEIM,<br><br>    Defendants. | Case No. 1:21-cv-00621-KES-HBK (PC)<br><br>ORDER ADOPTING IN PART AND DECLINING IN PART FINDINGS AND RECOMMENDATIONS<br><br>Docs. 17, 19 |

Plaintiff Samuel Samson Guzman is a state prisoner proceeding pro se and in forma pauperis on his third amended complaint ("TAC") filed pursuant to 42 U.S.C. § 1983. Doc. 17. The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Plaintiff initiated this case by filing a complaint on April 14, 2021, Doc. 1, and filed a first amended complaint on April 26, 2021, Doc. 5. Pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A, the assigned magistrate judge screened the first amended complaint, found it failed to state a claim, and granted plaintiff leave to amend. Doc. 10. Thereafter, plaintiff filed a second amended complaint on September 11, 2023. Doc. 11. The assigned magistrate judge screened the second amended complaint, found that it also failed to state a claim, and granted plaintiff further leave to amend. Doc. 12. On May 1, 2024, plaintiff filed his TAC. Doc. 17.

On June 3, 2024, the assigned magistrate judge issued findings and recommendations finding the TAC fails to state a cognizable claim under the First Amendment, Eighth Amendment, or Fourteenth Amendment and recommending that plaintiff's TAC be dismissed without further leave to amend. Doc. 19 ("F&R"). Specifically, as to plaintiff's retaliation claim under the First Amendment, the findings and recommendations noted doubt as to whether plaintiff had adequately pleaded a causal connection between plaintiff filing a grievance against defendants and defendants filing an Rules Violation Report ("RVR") against plaintiff, but held that, regardless, plaintiff's retaliation claim failed because issuing an RVR for Security Threat Group ("STG") behavior "advanced the legitimate correctional goal of discouraging STG behavior and ensuring compliance with prison regulations." *Id.* at 5. As for plaintiff's Fourteenth Amendment due process claim, the magistrate judge held that plaintiff failed to articulate a liberty interest that implicates procedural due process protections, but "[e]ven if the RVR for STG behavior triggered [p]laintiff's due process rights, the TAC fails to allege that prison staff violated any recognized right" because "federal due process did not require that [p]laintiff be notified of new prison regulations before he could be charged with violating them." *Id.* at 8–9. Finally, the findings and recommendations noted that, though listed as a cause of action, plaintiff did not put forth any facts to support an Eighth Amendment claim. *Id.* at 5 n.3. Plaintiff timely filed objections to the findings and recommendations. Doc. 20.

In accordance with the provisions of 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of this case. Having carefully reviewed the file, the Court declines to adopt the findings and recommendations insofar as they recommend dismissing plaintiff's First Amendment retaliation claim and Fourteenth Amendment due process claim. The findings and recommendations are adopted as to plaintiff's Eighth Amendment claim.

The Ninth Circuit has "set forth the five basic elements of a 'viable claim of First Amendment retaliation' in the prison context": "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269

1  (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)).

2  In his objections, plaintiff argues that the magistrate judge erred in finding he had not properly pleaded the fifth element and could not proceed on his retaliation claim against defendants R. Valdez and M. Jimenez. Doc. 20 at 2. Plaintiff argues that Valdez's and Jimenez's "retaliatory action [of issuing an RVR] did not advance a legitimate correctional goal" because their "disciplinary method was un[n]ecessary and severe" and they failed to follow procedure under section 3312 of Title 15 of the California Code of Regulations, which provides that "[w]hen verbal counseling achieves corrective action, a written report of the misconduct or counseling is unnecessary." *Id.* Plaintiff argues that lesser consequences are typically imposed for the alleged conduct and analogizes his infraction and Valdez's and Jimenez's response to an "RVR for destruction of state property for a ripped sheet in response to a grievance," alleging that "RVR's of this nature are used/issued to chill or silence the inmate population from filing grievances." *Id.* He states that "[v]erbal counseling would have educated plaintiff about the new rule and the newest STG certified symbol which plaintiff was unaware of. Instead[,] defendants skipped to punitive measures[.] [T]hus[,] their actions were arbitrary, retaliatory, and improper."

Though an allegation that correctional officers failed to adhere to the prison's regulations or policies does not form the basis of a constitutional violation on its own,[1] the enforcement of such regulations or policies with retaliatory intent may state a claim. "That an inmate is subjected to treatment that is consistent with an otherwise legitimate policy does not bar a First Amendment retaliation claim where that policy is enforced against the inmate with retaliatory intent." *Venegas v. Bianco*, Case No. 5:19-cv-01557-JLS-SHK, 2025 WL 747852, at *2 (C.D. Cal. Mar. 6, 2025); *see also Denton v. Bibb*, Case No. 1:19-cv-00316-ADA-EPG (PC), 2023 WL 5155787, at *10 (E.D. Cal. Aug. 10, 2023), recommendation adopted 2025 WL 495819 (E.D. Cal. Feb. 14, 2025) (collecting cases noting the same). "When [a policy is] enforced with retaliatory intent, the

---

[1] *See, e.g.*, *Solomon v. Felker*, No. 2:08-cv-02544 JFM P, 2013 WL 5375538, at *12 (E.D. Cal. Sept. 24, 2013) ("Plaintiff's allegation that the defendants failed to adhere to the prison's own institutional policies and procedures does not, by itself" give rise to a constitutional violation); *Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("[t]o the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress.").

1  policy cannot be said to "*reasonably* advance a *legitimate* correctional goal." *Venegas*, 2025 WL
2  747852, at *2 (citing *Rhodes*, 408 F.3d at 567-68).  Thus, though prisons clearly "have a
3  legitimate interest in stopping prison gang activity," such a general justification cannot defeat a
4  plaintiff's retaliation claim where the plaintiff has put forth evidence that the use of the
5  procedures was pretextual and the adverse action was taken with a retaliatory motive. *See*
6  *Johnson v. Ryan*, 55 F.4th 1167, 1202 (9th Cir. 2022) (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289
7  (9th Cir. 2003)).

8       Moreover, the Ninth Circuit has instructed that when analyzing the fifth element of a
9  retaliation claim, courts should consider the four factors set forth in *Turner*. *Brodheim v. Cry*,
10  584 F.3d 1262, 1272 (9th Cir. 2009) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).  That is, courts
11  should analyze whether there is a valid and rational connection between the prison regulation and
12  the asserted goal, whether there are "alternative means of exercising the right" available to
13  inmates, "the impact accommodation of the asserted constitutional right will have on guards and
14  other inmates, and on the allocation of prison resources generally," and the absence of "ready
15  alternatives available" to the prison for achieving the government's goals. *Id.*  Where a plaintiff
16  brings an as-applied claim, as here, the court should consider "whether applying the regulation"
17  to the plaintiff "was rationally related to the legitimate penological interest asserted by the
18  prison." *Prison Legal News v. Ryan*, 39 F.4th 1121, 1128 (9th Cir. 2022).

19       Here, viewing the matter in the light most favorable to the plaintiff, as the Court must at
20  this stage, plaintiff has adequately alleged that defendants utilized the prison's policies not for a
21  legitimate correctional goal, but rather, to retaliate against plaintiff for filing a grievance against
22  them, given the suspicion timing surrounding when the STG symbol was discovered in plaintiff's
23  cell, when plaintiff filed the grievance against defendants for the cell search, and when defendants
24  issued the RVR for STG activity against plaintiff.  Additionally, viewing the complaint in the
25  light most favorable to plaintiff, plaintiff alleges that prison officials typically use other means of
26  achieving the government's goal of curtailing gang activity when addressing STG certified
27  symbols. *Jones v. Slade*, 23 F.4th 1124, 1137 (9th Cir. 2022) ("[U]nequal application" of "an
28  otherwise legitimate policy" can "defeat[] the rational relationship between the policy and the

4

1  government's asserted justification."); *see also Daniels v. Baer*, No. 22-16664, 2025 WL
2  1794430, at *2 (9th Cir. 2025) (reversing dismissal for failure to state a claim for retaliation and
3  finding plaintiff's "allegations of inconsistent application [were] sufficient to survive the pleading
4  stage").

5  Plaintiff has adequately pleaded the remaining elements of a retaliation claim. Filing a
6  grievance is protected activity. *See Rhodes*, 408 F.3d at 567. An RVR for STG is an adverse
7  action. *See, e.g.*, *Ingram v. Sterling*, Case No. 3:14-cv-02691-GPC-DHB, 2016 WL 1211999, at
8  *9 (S.D. Cal. Mar. 29, 2016). As noted above, viewed in the light most favorable to plaintiff,
9  plaintiff has alleged a causal connection between his filing of a grievance and the RVR that was
10 issued against him. *See* F&R ("A retaliatory motive may be shown by the timing of the allegedly
11 retaliatory act or other circumstantial evidence, as well as direct evidence." (citing *Bruce*, 351
12 F.3d at 1288–89; then citing *McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th
13 Cir. 2011))). Specifically, plaintiff has alleged that defendants searched his cell on July 13, 2020,
14 and "a copy of an Angel & Butterfly was confiscated." TAC 3. Seven days later, on July 20,
15 2020, plaintiff filed a grievance against defendants "based on the arbitrary nature of the cell
16 search." *Id.* Three days after plaintiff filed the grievance, and ten days after the cell search and
17 confiscation, on July 23, 2020, defendants filed an RVR for STG activity. *Id.* at 3-4. The
18 magistrate judge indicated that "[i]t is not obvious to the Court whether a gap of 10 days between
19 discovering evidence of an RVR and the filing of a RVR is significant to suggest that it was only
20 filed in response to [p]laintiff's grievance" and that "the Court could reasonably infer that the July
21 23, 2020 RVR was simply issued in response to the discovery of the STG-related imagery on July
22 13, 2020, making the timing not suspicious at all." F&R 5. While the burden will ultimately rest
23 with plaintiff to prove his case by a preponderance of the evidence, he need not make such
24 showing now; at this stage, the Court need only view the evidence in the light most favorable to
25 plaintiff and determine if plaintiff has plausibly stated his claim. The Court finds that plaintiff
26 has plausibly pleaded facts to indicate a causal connection between his filing of his grievance and
27 the issued RVR given defendants' 10-day delay in issuing an RVR following the conduct.
28 Finally, the issuance of an RVR in response to filing a grievance would chill or silence a person

of ordinary firmness from filing additional grievances.[2]  For these reasons, plaintiff shall be allowed to proceed on his retaliation claim against defendants Valdez and Jimenez.

Plaintiff also objects to the conclusion of the findings and recommendation that plaintiff failed to state a due process violation claim under the Fourteenth Amendment.  Doc. 20 at 2-3.  Specifically, plaintiff disputes the magistrate judge's finding that he has not sufficiently implicated a liberty interest given that "the RVR for STG behavior will reflect negatively [for parole hearings] and [he] may receive a 5 year denial for parole." *Id.* at 3.  He also reiterates his allegation in his TAC that the prison did not disseminate information that a butterfly was a newly certified symbol in violation of a section 3378.1(f)(3)(A) of title 15 of the California Code of Regulations and that he did not know at the time that the butterfly was a certified STG symbol. *Id.* at 2.  Plaintiff's TAC indicates "[he] had never seen a memo for a newly certified symbol of a butterfly anywhere on the facility," that "[d]uring COVID the law library was closed," and that "the information was never disseminated to the general population by . . . the librarians." TAC 4.

"It is clearly established, both by common sense and by precedent, that due process requires fair notice of what conduct is prohibited before a sanction can be imposed." *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  "This principle applies within the prison setting." *See, e.g.*, *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993).  Thus, "before a prisoner can be charged with violating prison rules, the prisoner must have notice of those rules." *Radi v. McCormick*, 978 F.2d 715 (Table), at *1 (9th Cir. 1992) (holding that, to satisfy due process, a prisoner must be informed that the conduct he engaged in could subject him to disciplinary charges and punishment, but ultimately upholding the district court's conclusion that there was sufficient factual evidence in the record to find that the prisoner had notice of the rule he violated); *see also Schenck v. Edwards*, 133 F.3d 929 (Table), at *1 (9th Cir. 1998) (noting that, in a case brought by a prisoner, "[a]n individual's due process rights may be violated if he is sanctioned for conduct that he had insufficient notice was

---

[2] *See Brodheim*, 584 F.3d at 1270 (noting that "since harm that is more than minimal will almost always have a chilling effect, alleging harm *and* alleging the chilling effect would seem under the circumstance to be no more than a nicety.").

6

proscribed") (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *Anderson v. Crosby*, No. 5:04CV164SPMMD, 2005 WL 3357220, at *4 (N.D. Fl. Mar. 25, 2005) (citing *Reeves v. Peetcox*, 19 F.3d 1061 (5th Cir. 1994)) (though generally people are presumed to know the law, "in the unique setting of a prison, inmates are not necessarily presumed to know the regulations."). Moreover, section 3378.1(f)(3)(A) of title 15 of the California Code of Regulations requires that if an STG related symbol is certified, "dissemination of the newly certified sign or symbol will be made to . . . the incarcerated population." § 3378.1(f)(3)(A).[3]

Plaintiff alleges that the butterfly was a newly certified STG symbol, that its new classification had not been posted as a memo in the facility or disseminated to the general population, and that plaintiff was unable to access the library to inform himself of the new classification due to COVID-19. Viewing the TAC in the light most favorably to plaintiff, as the Court is required to do at this stage, plaintiff has adequately alleged that his due process rights were violated as he allegedly did not receive fair notice of the prohibited conduct prior to being sanctioned for such conduct.

Given that the findings and recommendations concluded that plaintiff had failed to state a due process claim under the Fourteenth Amendment as a general matter, the findings and recommendations did not consider plaintiff's allegations on this claim as to each defendant. The matter is therefore referred back to the magistrate judge to consider, with respect to each defendant, the extent to which plaintiff has sufficiently pleaded his due process claim as to that defendant.

Finally, the magistrate judge correctly found that plaintiff failed to state any facts consistent with an Eighth Amendment violation, *see* F&R 5 n.3, and plaintiff did not object to

---

[3] Though violation of a prison regulation does not by itself amount to a violation of the Constitution, *see, e.g.*, *Lovell*, 90 F.3d at 370, here, prison authorities' alleged violation of the regulation provides further support for plaintiff's due process claim that he was not provided sufficient notice that the symbol had been certified as an STG symbol before defendants sanctioned him for being in possession of that symbol. *Cf. Newell*, 79 F.3d at 118 (prison's creation of regulation prohibiting prisoner's conduct three weeks after conduct indicated prison's understanding that prisoner did not have sufficient notice from existing regulations that conduct was prohibited).

7

this finding, *see* Doc. 20.  The finding is therefore adopted.

Accordingly,

1. The findings and recommendations issued on June 3, 2024, Doc. 19, are adopted in part and declined in part as set forth above;

2. Plaintiff's Eighth Amendment claim is dismissed for failure to state a claim;

3. This action shall proceed on plaintiff's retaliation claim under the First Amendment against defendants Valdez and Jimenez; and

4. With respect to plaintiff's due process claim under the Fourteenth Amendment, the matter is referred back to the assigned magistrate judge for further findings regarding the extent to which plaintiff has sufficiently pleaded his due process claim as to each defendant.

5. This matter is also referred back to the assigned magistrate judge for other further proceedings consistent with this Order.

IT IS SO ORDERED.

Dated:    September 21, 2025

                              UNITED STATES DISTRICT JUDGE

8